STATE OF HAWAII, Plaintiff-Appellee, *v.* MILTON N. NIHIPALI, JR. and GEORGE MIKAELE, Defendants, and STEVEN YUEN, Defendant-Appellant

NO. 7489

CRIMINAL NO. 51422

NOVEMBER 30, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

This is an appeal by defendant-appellant Steven Yuen from a conviction of theft in the first degree by extortion, HRS §§ 708-830(3) and 708-831(1)(b). In this appeal, appellant challenges his conviction on the grounds that he was initially denied his right to a

speedy trial guaranteed by the sixth amendment to the United States Constitution and provided for under Rule 48(b) of the Hawaii Rules of Penal Procedure (HRPP).[1] Additionally, appellant claims that there was insufficient evidence to support the jury's verdict. For the reasons stated below, we reject the arguments proffered and affirm.

I.

Appellant was arrested on April 9, 1978, for the crime of theft in the first degree by extortion. He was subsequently indicted on June 15, 1978, and charged with both the theft offense and with criminal conspiracy. Two other persons, Milton Nihipali, Jr., and George Mikaele, were also indicted on similar and additional counts arising out of the same and other episodes and were tried with appellant Yuen as co-defendants.[2]

Trial was originally scheduled for the week beginning September 11, 1978, but was reset for the week beginning September 25, 1978, and later for March 12, 1979. Trial did not commence until April 30, 1979, approximately one year and three weeks after the arrests were made.

In the intervening period, all three defendants individually filed numerous motions which, together with a crowded court calendar and the necessity of transferring the case twice to different courts, contributed to considerable delay in bringing the case to trial. On August 4, 1978, defendant Nihipali moved for severance and separate trials on the grounds that proof of alleged criminal acts by co-defendants not involving Nihipali would prejudice his right to a fair trial. Appellant joined this motion on August 14, 1978, but later withdrew his motion for joinder on October 3, 1978. The motion for severance became further complicated by the addition of two charges against Nihipali, and an amended motion was filed on August 30, 1978. The motion was not decided until March 9, 1979, nearly seven months after its filing, by an order granting and denying the motion in part, leaving appellant joined with co-defendants for trial.

---

[1] Appellant filed pre-trial motions to dismiss on the same grounds, which were denied by the lower court.

[2] Defendants Nihipali and Mikaele are not parties to this appeal.

On November 6, 1978, appellant joined another of defendant Nihipali's motions, a motion to suppress mechanical tape recordings filed on August 15, 1978, amended on March 1, 1979, and not decided until April 30, 1979, the first day of trial. Additionally, appellant filed a motion to dismiss the indictment for lack of speedy trial on October 20, 1978. The motion was denied on November 27, 1978, on the grounds that the delay complained of was attributable to several defense pre-trial and discovery motions, and the motions to sever and to suppress joined by Yuen, the latter of which was still pending due to counsels' inability to agree on certain stipulated facts. Appellant again moved to dismiss the indictment for lack of speedy trial on March 7, 1979, which motion was joined by defendants Nihipali and Mikaele and never decided.[3]

## II.

The sixth amendment to the United States Constitution and article I, section 14 of the Constitution of the State of Hawaii guarantee an accused in all criminal prosecutions the right to a speedy trial. This right attaches the moment a person becomes an "accused." In this jurisdiction, "accused" denotes the point at which a formal indictment or information has been returned against a person or when he becomes subject to actual restraints on his liberty imposed by arrest, whichever first occurs. *State v. Bryson,* 53 Haw. 652, 655, 500 P.2d 1171, 1173 (1972).

Whether the Government has violated an accused's right to speedy trial is determined by applying the four-part test articulated in *Barker v. Wingo,* 407 U.S. 514 (1972), and adopted by this court in *State v. Almeida,* 54 Haw. 443, 509 P.2d 549 (1973), to the particular facts of each case. The four factors to be considered in determining whether dismissal is warranted[4] are: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. *Barker, supra* at 530. Because the

---

[3] Other motions were filed in the period preceding trial, most of which were filed by defendant Nihipali and not joined by appellant Yuen. These include several motions for bill of particulars, for discovery and to dismiss the indictment.

[4] The only remedy for the violation of an accused's right to speedy trial is dismissal with prejudice. Strunk v. United States, 412 U.S. 434 (1973).

right to speedy trial, unlike other rights guaranteed by the Constitution, is unusually amorphous and serves to protect the separate, often conflicting interests of the accused and of the public in the speedy disposition of cases, the weight accorded each of these factors is to be determined on an *ad hoc* basis. "None of these four factors is to be regarded 'as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial,' but rather, 'they are related factors and must be considered together with such circumstances as may be relevant.' " *State v. English,* 61 Haw. 12, 16 n.6, 594 P.2d 1069, 1072-73 n.6, quoting *Barker, supra* at 533. As the Supreme Court recognized in *Beavers v. Haubert,* 198 U.S. 77, 87 (1905), "[t]he right to a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

The length of delay serves as a triggering mechanism to the *Barker* analysis. *Barker, supra* at 530; *State v. O'Daniel,* 62 Haw. 518, 524, 616 P.2d 1383, 1388 (1980). Unless the delay is "presumptively prejudicial," the court need not inquire further into the other factors. *Barker, supra; O'Daniel, supra.* While the Supreme Court deliberately refused to fix a time at which delay would be presumed prejudicial, this court has held a delay of three months between arrest and indictment nonprejudicial, *State v. O'Daniel, supra,* and one of seven months presumptively prejudicial. *State v. Almeida, supra. See State v. Smith,* 59 Haw. 456, 583 P.2d 337 (1978) (eighteen-month interval between incident and trial triggered inquiry into reasons for delay); *State v. Mata,* 1 Haw. App. 31, 613 P.2d 919 (1980) (nine-month delay sufficient to require consideration of *Barker* elements). *See generally* Project, *Tenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1979-1980,* 69 Geo. L. J. 211, 378-79 (1980).

Appellant's trial did not commence until one year and three weeks had elapsed since his arrest and incarceration. We believe that such delay was presumptively prejudicial, warranting inquiry into the remaining *Barker* factors. *See also United States v. Henry,* 615 F.2d 1223 (9th Cir. 1980) (one-year delay presumptively prejudicial); *United States v. Mitchell,* 615 F.2d 1133 (5th Cir. 1979) (fifteen-month delay sufficient to trigger *Barker* analysis).

The primary reasons for the delay in this case are the filing of

numerous defense pre-trial motions, the length of time the trial court took to rule thereon, and the circuit court's "extraordinarily" congested trial docket generally which precluded prompt rescheduling of trial. The Supreme Court in *Barker* noted that the "neutral" reason of over-crowded courts should be weighed less heavily than, for example, deliberate and tactical prosecution attempts to delay trial. *Id.* at 531. Where the filing of defense motions and the delay inherent therein are principally responsible for lapse of time, however, courts generally demonstrate little sympathy for the defendant who then claims his right to speedy trial has been violated thereby.

In *State v. Smith, supra,* for example, we refused to recognize as bona fide defendant's contention that his right to speedy trial had been violated, where the nine months between the indictment and trial were attributable to the severance of charges into three separate trials done at his request.

> [H]e shall not be heard because the delays were a direct result of his own act or were the result of a benefit granted to him.
>
> . . . .
>
> Because the appellant had assistance of counsel when he made the motion to sever for separate trials, he should have known that the granting of the motion would require delay in the trial process.

*Id.* at 469, 583 P.2d at 345-46. *See also Keeny v. Swenson,* 458 F.2d 680 (8th Cir. 1972); *United States v. Lustman,* 258 F.2d 475 (2d Cir. 1958). *See generally* D. S. Rudstein, *The Right to a Speedy Trial: Barker v. Wingo in the Lower Courts,* 1975 U. Ill. L. F. 11.

Appellant contends, however, that the delay was caused by pre-trial activity in which he played no part. In response, we note first that appellant acquiesced in co-defendant Nihipali's motions until his first motion to dismiss filed in October, 1978. Appellant joined defendant Nihipali's motion to sever, but not on the ground that severance would aid in securing his right to a speedy trial. Moreover, appellant withdrew from said motion prior to filing his own motion to dismiss. In consenting to be tried with his co-defendants, then, appellant now cannot be heard to argue that delays caused by his co-defendants' motions are not attributable to him for the purpose of this sixth amendment analysis. *See United States v. Pollard,* 466 F.2d 1 (10th Cir. 1972), *cert. denied,* 409 U.S. 1127 (1973); *State v. Mata,* 125 Ariz. 243, 609 P.2d 58 (1980).

Furthermore, we find that on November 6, 1978, appellant joined defendant Nihipali's motion to suppress mechanical tape recordings filed on August 15, 1978, after filing his own motion to dismiss for lack of speedy trial on October 20, 1978. The motion to suppress was not decided until April 30, 1979, over eight months later. Appellant also filed two motions to dismiss the indictment, the first of which took over a month to reach resolution, as well as a motion for release on own recognizance or for reduction of bail, which was ultimately denied.

Appellant, however, did affirmatively attempt to secure his right to a speedy trial on several occasions. In addition to his two motions to dismiss for lack of speedy trial,[5] appellant requested a speedy trial in his pre-trial conference submission form on August 23, 1978, albeit six months after the return of his indictment. Additionally, appellant joined defendant Nihipali's motion to suppress on the understanding that it would not prejudice his motion to dismiss to do so.[6]

With reference to appellant's attempt to assert his right, the Supreme Court indicated that "[t]he strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that he experiences." *Barker, supra* at 531.

Appellant, however, in this appeal and also in his two pre-trial motions to dismiss, failed to allege any form of prejudice which he might have suffered as a result of the delay. The Supreme Court made clear that the element of prejudice should be considered in light of the interests which the right to speedy trial was designed to protect. *Barker, Id.* at 532. The three interests, previously identified by the Court in *United States v. Ewell,* 383 U.S. 116, 120 (1966), are: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern accompanying public accusation; and (3) to

---

[5] While there is authority to the contrary, *see* State v. Stoeckle, 41 Wis.2d 378, 164 N.W.2d 303 (1969), we believe that defendant's motions to dismiss are tantamount to an assertion of his right to speedy trial. *See e.g.,* United States v. LaBorde, 496 F.2d 965 (6th Cir. 1974); United States v. Annerino, 495 F.2d 1159 (7th Cir. 1974).

[6] However, the judge indicated that appellant's joinder would not affect the motion to dismiss for the reason that a ruling on said motion would be based only on the events that had transpired prior to its filing.

limit the possibility that the defense may be impaired by the passage of time.[7] *Barker, supra.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Our own examination of the record reveals no evidence that appellant's ability to present his case was hampered by the delay. We recognize that pre-trial incarceration can produce detrimental consequences for the defendant in his ability to proceed with his case, in the disruption of his family life, and in the effect on him personally of having restraints placed on his liberty. At the same time, however, we note that appellant's incarceration prior to trial was largely of his own making. The record suggests that bail was set high because of appellant's prior criminal offenses involving the use of guns, his unsatisfactory adjustment while on probation for a prior offense, and alleged threats he made to the Government's key witness in this case. Appellant was ineligible for release on his own recognizance because he was serving a five-year probation sentence when arrested for the present crime. Appellant was also unemployed at the time of his arrest.

Viewing the relevant factors together, we conclude, primarily from the absence of any showing of prejudice and from the reasons for the delay, that appellant was not denied his sixth amendment right to speedy trial. *See United States v. Annerino, supra.* We turn now to appellant's speedy trial claim based on Rule 48.

### III.

Appellant contends that the one-year and three-week delay between arrest and trial violated the requirement of Rule 48(b), HRPP, that trial be commenced within six months of his arrest.

However, appellant's claim bears little merit in light of our recent decision in *State v. Soto,* 63 Haw. 317, 627 P.2d 279 (1981), wherein we construed Rule 48(c) to exclude from computation of this six-month period "any delay resulting from any pretrial motion concerning the defendant . . . from the filing of the motion through the

---

[7] As examples of the impairment delay may cause to the defense case, the Court mentions the death or disappearance of witnesses and witnesses' loss of memory. Barker, *supra* at 532.

conclusion of the hearing on, or other prompt disposition of, such motion."[8] *Id.* at 320, 627 P.2d at 281.

Even without adding the time spent on defense pre-trial motions not filed or joined by appellant, we find that the aggregate amount of time attributable to motions concerning him is sufficient to reduce the period of delay for Rule 48 purposes to less than six months.

Appellant's first motion to dismiss was decided a little over one month after it was filed. Defendant Nihipali's motion to suppress mechanical tape recordings, which appellant joined nearly three months after its filing, was denied approximately five months and three weeks after appellant's joinder. Appellant was also a party to defendant Nihipali's motion to sever for almost one month and three weeks. Taking into account the slight overlap in dates for these periods, we find that a total of approximately eight months out of the twelve and three-quarter months of delay were consumed with motions concerning appellant.

We therefore find no violation of Rule 48, as trial commenced within six months of appellant's arrest as computed pursuant to subsection (c)(1).

### IV.

Finally, appellant claims that there was insufficient evidence to support the jury's verdict. Specifically, appellant points to inconsistencies in the testimony of the witness identifying appellant as one of the persons picking up the extortion payment, and the absence of direct evidence indicating appellant's knowledge of the extortion scheme.

---

[8] Rule 48(c), HRPP, provides in pertinent part as follows:

(c) *Excluded Periods.* The following periods shall be excluded in computing the time for trial commencement:

(1) periods of delay resulting from collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals and trials of other charges. . . .

In *Soto*, we adopted the language of the Federal Speedy Trial Act, 18 USC § 3161(h)(1)(F) (Supp. III 1979), in construing the nature of the period denoted by the term "proceedings" in Rule 48(c)(1).

Upon a review of the record, we find substantial direct and circumstantial evidence from which the jury could have convicted defendant. *See State v. Summers,* 62 Haw. 325, 614 P.2d 925 (1980); *State v. Hernandez,* 61 Haw. 475, 605 P.2d 75 (1980). The witness in question, a victim of the extortion scheme, testified that appellant and defendant Mikaele identified themselves as being from "Al," the name used by the extortionist who had earlier called with the threat. The victim also testified that appellant picked up the payment and saw the money at that time. Another Government witness who had been involved with the co-defendants testified that appellant was to take over the entire operation if anything happened to defendant Nihipali. We find that this and other testimony sufficiently linked appellant to the extortion conspiracy. Moreover, "guilty knowledge and felonious intent may be inferred from defendant's own conduct, as well as from the other circumstances surrounding the commission of the offense." *State v. Brighter,* 62 Haw. 25, 32, 608 P.2d 855, 860 (1980).

Affirmed.

*Rogers M. Ikenaga* on the brief for defendant-appellant, Steven Yuen.

*Lee T. Nakamura,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.