879 P.2d 520

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Harry F. WASSON, Defendant–Appellant.**

**No. 16400.**

Supreme Court of Hawai'i.

Aug. 29, 1994.

Walter J. Rodby, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Pros. Atty., on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

By a complaint filed on February 24, 1990 in the District Court of the First Circuit, defendant-appellant Harry F. Wasson (Wasson) was charged with assault in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 707–712(1)(a).[1] After Wasson demanded a jury trial, the case was committed for trial to the Circuit Court of the First Circuit. Prior to trial, which began on May 6, 1992, Wasson twice moved to have the assault charge dismissed on speedy trial grounds. Both times he asserted Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (Rule 48) as a basis for dismissal, claiming that his trial had not commenced within six months of the filing of the charge as required by the rule.[2] Wasson's second motion also asserted his right to a speedy trial under the Hawai'i and United States Constitutions.[3] The circuit court denied both motions.

A jury convicted Wasson of the assault charge. He now appeals the judgment of conviction, arguing that the circuit court erred in denying his motions to dismiss. Plaintiff-appellee State of Hawai'i (State) concedes that the court erroneously denied Wasson's Rule 48 motions to dismiss, but argues that the court properly ruled that Wasson's constitutional speedy trial right was not violated despite the more than two year delay in the commencement of his trial. We agree with the State on both points. We therefore remand this case to the circuit court for vacation of the judgment of convic-

tion and dismissal of the charge, with or without prejudice, in the court's discretion.

## I. *BACKGROUND*

The assault charge against Wasson stemmed from an incident occurring at the snack bar on the Brigham Young University campus on October 21, 1989. Wasson's mother and father were also charged with assault in the third degree in connection with the incident.

Wasson was arraigned in district court on May 18, 1990. On November 16, 1990, he demanded a jury trial and was committed for trial to the circuit court. Following the filing of a new complaint in circuit court, again charging Wasson with assault in the third degree, Wasson was arraigned on January 7, 1991.

On September 13, 1991, Wasson's co-defendant mother filed a motion to dismiss the charge against her pursuant to Rule 48, arguing that her trial had not commenced within six months from the date of the filing of the charge against her. On September 30, 1991, Wasson filed a joinder in that motion, also seeking dismissal of the charge against him based on Rule 48.

A hearing was held on October 15, 1991. On October 21, 1991, the circuit court orally denied the motion. The court found that of the 605 days that had elapsed since the filing of the initial complaint in district court, at least 445 days were "excludable" for various reasons under Rule 48(c).[4] Excluding those 445 days, the court found that only 160 days—approximately five and one-third months—counted toward the six month time limit for commencing Wasson's trial.[5] A

---

1. HRS § 707–712(1)(a) (1985) provides that a person commits the offense of assault in the third degree if he or she "[i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]"

2. HRPP 48(b)(1) requires a court, on motion of the defendant, to dismiss a charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from "the date of arrest or filing of the charge, whichever is sooner[.]"

3. The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution both provide in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial[.]"

4. Rule 48(c) provides that certain "periods shall be excluded in computing the time for trial commencement[,]" including, for example, periods of delay resulting from collateral or other proceedings concerning the defendant; congestion of the trial docket when the congestion is attributable to exceptional circumstances; continuances granted at the request or with the consent of the defendant or his counsel; and the absence or unavailability of the defendant.

5. Under an alternative calculation, the court found that 469 of the 605 days were "excludable." Under that computation, therefore, only 136 days counted toward the six month period for commencing trial.

written order denying Wasson's motion was entered on January 2, 1992.

On May 4, 1992, Wasson filed another motion to dismiss, this time based on both Rule 48 and his constitutional right to a speedy trial under the Hawai'i and United States Constitutions. A hearing was held two days later. At the end of the hearing, the court concluded that the ruling on Wasson's previous Rule 48 motion was "law of the case" and would not be reconsidered. Thus, it ruled that it would only consider whether any time subsequent to the entry of the written order denying Wasson's first Rule 48 motion counted toward the six month period for commencing trial. The court found that none of that time was "includable for the defense" and denied Wasson's motion. It did not, however, identify the specific bases under Rule 48(c) for excluding the entire period from its computation.[6]

Wasson's trial, which was consolidated with those of his co-defendant parents, commenced on May 6, 1992. On May 13, 1992, the jury found Wasson guilty of assault in the third degree. Wasson was subsequently sentenced to a fine of $100. He now appeals the denial of his two motions to dismiss.

## II. DISCUSSION

### A. Rule 48

The State concedes on appeal that the circuit court erred in several respects in denying Wasson's Rule 48 motions to dismiss. Among other things, the State concedes that in denying Wasson's second motion the court erroneously considered only the time period subsequent to January 2, 1992, the date on which the written order denying Wasson's first Rule 48 motion was filed. The State acknowledges that the court should have considered the period dating back to the conclusion of the hearing on the first Rule 48 motion, October 21, 1991. See State v. Soto, 63 Haw. 317, 320, 627 P.2d 279, 281 (1981) (per curiam). The State also concedes that the court erred in excluding the entire period of time between the denial of Wasson's first Rule 48 motion and the hearing on his second

motion, acknowledging that only a relatively small portion (29 days) of that 198 day period was "excludable" for purposes of Rule 48.

The State has properly conceded error on these points. See Territory v. Kogami, 37 Haw. 174, 175 (1945) (even when the prosecutor concedes error, before a conviction is reversed, "it is incumbent on the appellate court to ascertain first that the confession of error is supported by the record and well-founded in law and to determine that such error is properly preserved and prejudicial."). When the time improperly excluded as a result of the errors is included in the Rule 48 computation, the lapse between the filing of the charge against Wasson and his trial clearly exceeded six months. We therefore hold that the court erroneously denied Wasson's Rule 48 motion to dismiss.

█ That, however, does not end the matter. The Rule 48 violation entitles Wasson to have the charges against him dismissed "with or without prejudice at the court's discretion." HRPP 48(b) (emphasis added). But Wasson also appeals the denial of his motion to dismiss on constitutional speedy trial grounds. "The only remedy for the violation of an accused's right to speedy trial is dismissal with prejudice." State v. Nihipali, 64 Haw. 65, 67 n. 4, 637 P.2d 407, 408 n. 4 (1981) (emphasis added). Thus, were we to find a violation of Wasson's constitutional speedy trial right, the charge against him would have to be dismissed with prejudice. Accordingly, we must address the constitutional issue.

### B. Constitutional Right to Speedy Trial

█ In all criminal prosecutions, the accused has the right to a speedy trial under the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution.

This right attaches the moment a person becomes an "accused." In this jurisdiction, "accused" denotes the point at which a formal indictment or information has been returned against a person or when he becomes subject to actual restraints on his

---

6. The court did not expressly deny Wasson's motion to dismiss on the constitutional speedy trial

ground, but did so implicitly by proceeding with the trial.

liberty imposed by arrest, whichever first occurs. *State v. Bryson,* 53 Haw. 652, 655, 500 P.2d 1171, 1173 (1972).

Whether the Government has violated an accused's right to speedy trial is determined by applying the four-part test articulated in *Barker v. Wingo,* 407 U.S. 514, [92 S.Ct. 2182, 33 L.Ed.2d 101] (1972), and adopted by this court in *State v. Almeida,* 54 Haw. 443, 509 P.2d 549 (1973), to the particular facts of each case. The four factors to be considered in determining whether dismissal is warranted are: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. *Barker, supra* at 530[, 92 S.Ct. at 2192]. Because the right to speedy trial, unlike other rights guaranteed by the [United States and Hawai'i] Constitution[s], is unusually amorphous and serves to protect the separate, often conflicting interests of the accused and of the public in the speedy disposition of cases, the weight accorded each of these factors is to be determined on an *ad hoc* basis. "None of these four factors is to be regarded 'as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial,' but rather 'they are related factors and must be considered together with such circumstances as may be relevant.'" *State v. English,* 61 Haw. 12, 16 n. 6, 594 P.2d 1069, 1072–73 n. 6 [1978], quoting *Barker, supra* at 533[, 92 S.Ct. at 2193].

*Nihipali,* 64 Haw. at 67–68, 637 P.2d at 410–11 (footnote omitted).

### 1. *Length of the delay*

■ The first factor, the length of the interval between accusation and trial, "serves as a triggering mechanism to the *Barker* analysis." *Id.* at 68, 637 P.2d at 411 (citing *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, and *State v. O'Daniel,* 62 Haw. 518, 524, 616 P.2d 1383, 1388 (1980)). Because some pretrial delay is inevitable in almost every criminal prosecution, unless the delay in the commencement of trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," inquiry into the remaining *Barker* factors is unnecessary. *Doggett v.*

*United States,* — U.S. —, —, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520, 528 (1992).

Although precisely when a given delay passes into "presumptively prejudicial" territory depends on the facts of each case, *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192, we have held that delays shorter than the one in this case have triggered inquiry into the other *Barker* factors. *See, e.g., Nihipali,* 64 Haw. at 68, 637 P.2d at 411 (delay of one year and three months between arrest and trial); *Almeida,* 54 Haw. at 448, 509 P.2d at 522 (seven months between indictment and arrest); *see also Doggett,* — U.S. at — n. 1, 112 S.Ct. at 2691 n. 1 ("[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

Wasson became an "accused" on February 24, 1990, when the initial complaint against him was filed in the district court. His trial began on May 6, 1992. We hold that the almost twenty-six and one-half month delay in the commencement of Wasson's trial suffices to warrant inquiry into the other *Barker* factors.

### 2. *Reasons for the delay*

■ "The flag all litigants seek to capture is the second factor, the reason for the delay." *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640, 654 (1986). Here, Wasson claims that "court congestion" was the primary reason for the delay in his trial.

There is no question that the crowded criminal court docket contributed significantly to the lag in the commencement of Wasson's trial. Indeed, the State does not seriously contend otherwise, essentially conceding that the unavailability of a courtroom to hold Wasson's trial accounted for the bulk of the delay in the start of his trial. It concedes, for instance, that for much of the time following Wasson's arraignment in circuit court, the parties were ready for trial, but did not proceed primarily because no courtroom was open.

Wasson, however, was not without responsibility for at least some of the delay in the

commencement of his trial. For instance, he failed to appear for his arraignment twice, once in district court and once in circuit court,[7] and moved for at least two continuances. The nearly eight month lag between his initial arraignment in district court and his demand for a jury trial, which necessitated another arraignment in circuit court, also contributed to the delay, as did the filing of his first Rule 48 motion.

*Barker* instructs that "different weights should be assigned to different reasons" for the delay in bringing an accused to trial. 407 U.S. at 531, 92 S.Ct. at 2192. For instance, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government[,]" *id.*, while "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily[.]" *Id.* Here, the record before us indicates that, although both the State and Wasson share some responsibility for the delay, the predominant reason was ordinary congestion in the circuit court. While that "more neutral" reason counts less heavily against the State than would a deliberate delay, *id.*, and is offset to a degree by Wasson's own actions, *see Nihipali,* 64 Haw. at 69, 637 P.2d at 411, it nevertheless still tips the scales in favor of Wasson, "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192; *see also Doggett,* —— U.S. at ——, 112 S.Ct. at 2693.

Accordingly, we believe that this second *Barker* factor weighs, albeit not heavily, in favor of finding a deprivation of Wasson's constitutional right to a speedy trial.

### 3. *Assertion of speedy trial right*

■ We next turn to the third *Barker* factor, the defendant's assertion of his or her right to a speedy trial. We note initially that "[a] defendant has no duty to bring himself

[or herself] to trial; the [s]tate has that duty[.]" *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190 (footnote omitted). Thus, a defendant does not waive his or her right to a speedy trial by failing to demand one. *Id.* at 526, 92 S.Ct. at 2190. "That does not mean, however, that the defendant has no responsibility to assert his [or her] right." *Id.* at 528, 92 S.Ct. at 2191. Because "[w]hether and how a defendant asserts his [or her] right is closely related to the other [*Barker* ] factors," *id.* at 531, 92 S.Ct. at 2192, the assertion of one's right to a speedy trial "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531–32, 92 S.Ct. at 2192–93; *see also State v. Durry,* 4 Haw.App. 222, 227, 665 P.2d 165, 170 (1983).

■ The record before us indicates that the first time Wasson arguably asserted his speedy trial right was on September 30, 1991, when he joined in his co-defendant mother's Rule 48 motion to dismiss. The motion, however, asserted only Rule 48 as a basis for dismissal; it did not assert the constitutional speedy trial right as a separate ground.[8] At the hearing on the motion, Wasson's counsel made no attempt to offer any evidence or argument relating to Wasson's constitutional speedy trial right. Instead, after focusing her argument exclusively on the "excludable" and "includable" time under Rule 48, Wasson's counsel stated that she would not "be offering any argument about speedy trial, anything of that order." In our view, therefore, Wasson's joinder in his co-defendant's Rule 48 motion did not amount to an assertion of his constitutional right to a speedy trial.

■ Even if we were to treat the Rule 48 motion as equivalent to a motion to dismiss on constitutional speedy trial grounds, it would not weigh heavily in Wasson's favor. We have previously stated that a defendant's motion to dismiss on speedy trial grounds is

---

7. Wasson's failure to appear for his arraignment in circuit court may not have been entirely his fault, because the scheduled date was changed at the request of the prosecution without his knowledge, and his counsel was unable to contact him to inform him of the new date.

8. Wasson's decision to rely solely on Rule 48 appears to have been intentional, because on September 13, 1991 his other co-defendant, his father, filed a motion to dismiss the charge against him based on both Rule 48 and his constitutional speedy trial right, but Wasson chose not to join in that motion.

"tantamount to an assertion of his [or her] constitutional right to a speedy trial." *Nihipali,* 64 Haw. at 70 n. 5, 637 P.2d at 412 n. 5. However, unless the motion to dismiss is accompanied in some way by an alternative demand, even if made implicitly, for a speedy trial, it does not necessarily indicate that the defendant actually wants to be tried immediately. *See Loud Hawk,* 474 U.S. at 314, 106 S.Ct. at 655 (defendants' repeated motions to dismiss on speedy trial grounds do "not establish that [they] have appropriately asserted their rights."). For instance, a defendant who believes that a delay in his or her trial is advantageous might move for dismissal on speedy trial grounds, hoping that if the motion is denied, trial will continue to be postponed. In *Barker,* the Court recognized the possibility that a defendant could harbor such ambivalent motivations:

> Barker moved to dismiss the indictment. The record does not show on what grounds this motion was based, although it is clear that no alternative motion was made for an immediate trial. Instead the record strongly suggests that while he hoped to take advantage of the delay in which he acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried.

407 U.S. at 535, 92 S.Ct. at 2193. Thus, in the absence of some other indication that a defendant making a motion to dismiss actually desires a speedy trial, the motion, standing alone, does not weigh in his or her favor. *See Cowart v. Hargett,* 16 F.3d 642, 646 (5th Cir.1994), *petition for cert. filed,* No. 94–5137 (July 11, 1994).

The record indicates that the first time Wasson expressly asserted his constitutional speedy trial right was on May 4, 1992, two days before the start of his trial, when he again moved to have the charge against him dismissed. This time Wasson asserted both Rule 48 and his constitutional speedy trial right as bases for dismissal. Notwithstanding his request for dismissal on constitutional grounds, Wasson again made no attempt to demonstrate an actual deprivation of the right. His memorandum in support of his motion merely asserted, without elaboration or supporting evidence, that the delay in his

trial "prejudiced his interest in not minimizing anxiety and concern, and actually impairing the defense through loss of specific recall and the loss of key witnesses." His counsel offered no argument on the constitutional speedy trial ground at the May 6, 1992 hearing, again choosing to focus solely on Rule 48. Moreover, coming a mere two days before his scheduled trial date, Wasson's first and only assertion of his constitutional right to a speedy trial was clearly not intended to hasten his trial date, but simply to gain dismissal of the assault charge.

Because on the record before us Wasson's only assertion of his constitutional right to a speedy trial appears to have been perfunctory, and because it came on the eve of his trial, in our view this third *Barker* factor does not weigh in his favor.

### 4. *Prejudice to defendant*

Wasson's lukewarm assertion of his constitutional speedy trial right informs our analysis of the final *Barker* factor—prejudice to the defendant. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. The fact that Wasson asserted his right to a speedy trial without attempting to demonstrate actual prejudice and just before trial strongly suggests that he was not prejudiced by the delay in his trial. *See id.* ("The more serious the deprivation, the more likely a defendant is to complain."). The record before us corroborates our impression.

The constitutional right to a speedy trial serves "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. at 2193. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193). Wasson points to nothing in the record suggesting that he suffered any significant prejudice to the interests the constitutional right to a speedy trial was designed to protect.

First, Wasson was not incarcerated before trial. Second, although Wasson claims that

he suffered "anxiety and concern over the matter," he fails to offer any support for that *pro forma* assertion. While we can safely assume that Wasson, like most criminal defendants, suffered some anxious moments awaiting his trial, *see Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, nevertheless, for purposes of the speedy trial analysis, something more than a bare assertion of disquietude is generally required before this form of prejudice will weigh in favor of the accused. *State v. Ferraro*, 8 Haw.App. 284, 300, 800 P.2d 623, 632 (1990) (" '[A] mere assertion that one had been upset or concerned about a pending criminal prosecution is not sufficient' to establish prejudicial anxiety." (quoting *Reed v. United States*, 383 A.2d 316, 320 (D.C.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978))); *see also United States v. Simmons*, 536 F.2d 827, 831–32 (9th Cir.) ("Conclusory allegations of general anxiety and depression are present in almost every criminal prosecution. We find nothing in the record which distinguishes the emotional strain experienced by [the accused] from that of other criminal defendants.... We therefore conclude that such allegations ... constitute a minimal showing of prejudice."), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976).

Third, Wasson has made no attempt to show, and we find nothing in the record indicating, that his ability to defend himself at trial was adversely affected due to the delay in the commencement of his trial. While Wasson generically asserts that "his defense was impaired in that there was certainly a loss of specific recall on his behalf and on the behalf of witnesses who were called on to testify on his behalf," he does so without citation to any specific instances at

trial. Our own review of the record reveals that none of the witnesses, either on behalf of Wasson or the prosecution, testified to or otherwise indicated any significant memory loss. To the contrary, our review of the testimony of all nine witnesses, including six for the defense, indicates that their accounts of the underlying events were relatively complete and detailed.

We recognize that "loss of memory ... is not always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *see also Doggett*, —— U.S. at —— ——, 112 S.Ct. at 2692–93. Nevertheless, given the relatively uncomplicated facts of the underlying incident in this case, we think that if there were any significant interference with the witnesses' ability to recall any material facts, there would be at least some suggestion of that in the record. The absence of any such evidence, together with Wasson's failure to allege even one example of potentially exculpatory evidence that might have been lost or forgotten between the accusation against him and his trial, strongly suggests to us that, if there were any prejudicial loss of memory, it was minimal.

A showing of actual prejudice to the defense is not essential to every speedy trial claim. In some cases, for instance, where there is an exceedingly long delay in bringing an accused to trial, which is neither caused nor acquiesced in by the accused, the presumption of evidentiary prejudice may become so strong that, if not "persuasively rebutted" by the prosecution, it will entitle the accused to relief, even absent specifically demonstrable prejudice. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2694.[9] Those cases,

9. In *Doggett*, the defendant was indicted on federal drug charges in February 1980, but through what the Court described as "egregious" negligence in attempting to locate him—a task that turned out to require no more than a simple credit check—it took the United States government until September 1988 to arrest him. Although the defendant was out of the country for two and one-half years following his indictment, for the next six he lived openly in the United States. —— U.S. at ——, 112 S.Ct. at 2689. He was unaware of his indictment before his arrest and asserted his speedy trial right in due course after he was taken into custody. *Id.* at ——, 112

S.Ct. at 2691. Stating that the "defendant would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights," *id.* at ——, 112 S.Ct. at 2694, the Court held that his constitutional right to a speedy trial was violated even though the defendant had failed to show any specifically demonstrable prejudice resulting from the delay: "When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id.*

however, will be rare, and this is not one of them.

Thus, Wasson's failure to make any showing that he was actually prejudiced due to the delay in his trial militates against a finding that his speedy trial right was violated. *See Loud Hawk*, 474 U.S. at 315, 106 S.Ct. at 656 (the "possibility of prejudice is not sufficient to support the [defendants'] position that their speedy trial rights were violated.").

### 5. *Conclusion on speedy trial issue*

■ Our *Barker* inquiry leads us to conclude that Wasson was not deprived of his right to a speedy trial under either the Hawai'i or United States Constitutions. Although the second *Barker* factor, the reason for the delay, leans marginally in Wasson's favor, the weight attributed to that factor is offset by Wasson's eleventh-hour assertion of his right and his failure to even attempt to demonstrate that he was actually prejudiced by the delay in the commencement of his trial. We therefore hold that the circuit court properly denied Wasson's motion to dismiss for violation of his constitutional speedy trial right.

### III. *CONCLUSION*

For the foregoing reasons, we: (1) reverse the circuit court's ruling denying Wasson's Rule 48 motion to dismiss; (2) affirm its ruling denying his motion to dismiss for violation of his constitutional speedy trial right; and (3) remand this case to the circuit court for vacation of the judgment of conviction and dismissal, with or without prejudice in the discretion of the court, pursuant to HRPP 48(b).