148 P.3d 1222

STATE of Hawai'i, Plaintiff–Appellee,

v.

Erik Barend DERYKE, Defendant–
Appellant.

No. 27259.

Intermediate Court of Appeals of Hawai'i.

Dec. 8, 2006.

Brian R. Vincent, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

Opinion of the Court by NAKAMURA, J.

Defendant–Appellant Erik Barend Deryke (Deryke) appeals from the Judgment entered on March 29, 2005, in the District Court of the First Circuit, Kaneohe Division (district court).[1] Deryke was charged with 1) Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E–61(a)(1) and (a)(3) (Supp.2001),[2] and 2) unsafe changing of lanes, in violation of HRS § 291C–49 (1993). Pursuant to a plea agreement, Deryke entered a conditional plea[3] of no contest to the OVUII charge and on that basis was convicted of OVUII. As part of the plea agreement, the State of Hawai'i (the State) agreed to dismiss the charge of unsafe changing of lanes. Because this was Deryke's second OVUII offense,[4] the district court sentenced him to suspension of his driver's license for one year, a $500 fine, and 240 hours of community service. The court also ordered Deryke to obtain an alcohol assessment and to pay fees and costs.

Deryke's conditional plea reserved his right to seek appellate review of the district

James A. DeLacy, Brian A. Costa (Costa & DeLacy, LLLC), on the briefs, for Defendant–Appellant.

1. Per diem District Court Judge Lawrence R. Cohen presided.

2. At the time of the charged offense, Hawaii Revised Statutes (HRS) § 291E–61(a)(1) and (a)(3) (Supp.2001), provided:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> . . . .
> (3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

3. Hawai'i Rules of Penal Procedure (HRPP) Rule 11(a)(2) (2006) provides:

> (2) CONDITIONAL PLEAS. With the approval of the court and the consent of the State, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specific pretrial motion. A defendant who

prevails on appeal shall be allowed to withdraw the plea.

4. HRS § 291E–61(b)(2) (Supp.2001), the version of the statute applicable to Deryke's sentencing, provided:

> (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
> . . . .
> (2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a):
> (A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;
> (B) Either one of the following:
> (i) Not less than two hundred forty hours of community service work; or
> (ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively; and
> (C) A fine of not less than $500 but not more than $1,500.

court's denial of his March 17, 2005, Motion to Dismiss for Violation of HRPP [Hawai'i Rules of Penal Procedure] Rule 9 (Motion to Dismiss). In the Motion to Dismiss, Deryke sought the dismissal of the charges against him based on his claim that the State failed to execute a bench warrant issued for his arrest without unnecessary delay. On appeal, Deryke argues that the district court abused its discretion when it denied his Motion to Dismiss. We disagree with Deryke and affirm the Judgment.

## I. BACKGROUND

On November 6, 2002, Deryke was arrested for OVUII and unsafe changing of lanes. On December 12, 2002, Deryke, appearing in district court through his counsel, entered a plea of not guilty to each charge. Trial was set for January 9, 2003. On that date, Deryke's counsel appeared without Deryke, and the parties stipulated to continue the trial until February 13, 2003. On February 13, 2003, and March 13, 2003, Deryke appeared with counsel and on each date requested, and was granted, a continuance of the trial date. The record reflects that Deryke waived his right to a speedy trial in connection with his March 13, 2003, request for a continuance.

On April 17, 2003, Deryke's counsel appeared and requested a further continuance because Deryke was attending a work-related training program in California. Deryke's counsel indicated that a change-of-plea was forthcoming and that no witnesses would be required for the new May 22, 2003, trial date set by the court. On May 22, 2003, and July 24, 2003, Deryke's counsel again appeared and requested continuances in anticipation of a change-of-plea, noting Deryke's ongoing work training in California. The district court granted the requested continuances, but on the latter date, the court took under advisement whether Deryke's bail should be forfeited and a bench warrant issued. The court established September 4, 2003, as the new date for trial.

On September 4, 2003, Deryke again failed to appear. The record reflects that Deryke's counsel stated that he was unable to contact Deryke who was residing in California. The record also indicates that Deryke's counsel

represented that if he got in touch with Deryke, counsel would file an *ex parte* motion to recall the bench warrant and reinstate the bail. On September 4, 2003, the district court ordered Deryke's existing bail revoked and issued a bench warrant, setting bail on the warrant at $250.

On February 18, 2005, Deryke personally appeared at the district court and tendered the $250 bail on the bench warrant. The district court reset the case for a hearing on March 1, 2005. At that hearing, Deryke appeared with new counsel and requested a continuance so that he could file a motion to dismiss the pending charges of OVUII and unsafe changing of lanes pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 9 (2006).

On March 17, 2005, Deryke filed his Motion to Dismiss. He argued that the charges against him should be dismissed with prejudice because the State failed to serve the September 4, 2003, bench warrant upon him without unnecessary delay as required by HRPP Rule 9. Deryke attached his declaration to the Motion to Dismiss, in which he stated:

1. Declarant is a lifelong Hawaii resident and the Defendant in the above captioned case.

2. I have resided continuously at [a specified University Avenue apartment in] Honolulu, Hawai'i since 1998[.]

3. In April 2003, my employer The Cheesecake Factory, Inc., sent me to corporate training in the State of California, with return scheduled for early October 2003.

4. I returned to the State of Hawaii on October 3, 2003 and have not left the Island of Oahu since return.

5. During my absence from May 2003 until October 3, 2003, my wife, Konane Deryke, resided at all times in our University Avenue apartment and did not receive any communication from any person or entity seeking my whereabouts or return date.

6. Since my return on October 3, 2003, I have not been contacted by any sheriff, police officer or other official regarding the

issuance of a bench warrant, nor to my knowledge has any person attempted to serve a bench warrant at my residence.

On March 24, 2005, the State filed its memorandum in opposition.

The district court heard the Motion to Dismiss on March 29, 2005. At the hearing, Deryke's new counsel made an offer of proof that if called to testify, Deryke "would testify verbatim in accordance with his Declaration attached to the motion...." [5] The State did not argue or offer any evidence to show that it ever attempted to execute the warrant on Deryke. In essence, the State argued that the eighteen-month delay between the issuance of the bench warrant on September 4, 2003, and Deryke's appearance in district court on February 18, 2005, did not constitute unnecessary delay. In denying Deryke's Motion to Dismiss, the district court orally ruled as follows:

> **THE COURT:** (indiscernible) this Court has held in numerous instances that two years is the cutoff point for purposes of determining reasonableness of action by the State. Court further notes that other judges in similar jurisdictions (indiscernible) held the same way. For purposes of uniformity and justice, this Court will follow that two year limitation until such time as the Courts are given further information by the appellate court (indiscernible) is going to deny the motion as not being in violation of Rule 9.

Following the district court's ruling, Deryke entered his conditional no contest plea to the OVUII charge and the charge of unsafe changing of lanes was dismissed pursuant to the parties' plea agreement. The district court imposed sentence on the OVUII charge and this appeal followed.

## II. DISCUSSION

Deryke argues that the district court improperly denied his Motion to Dismiss because the State failed to undertake any effort to execute the September 4, 2003, bench warrant at any point prior to his voluntary appearance on February 18, 2005. Deryke further argues that the district court adopted an improper policy of not dismissing any charges for failure to prosecute unless more than two years had elapsed between issuance and service of the bench warrant.

HRPP Rule 9(c) [6] requires that bench warrants be executed "without unnecessary delay." *State v. Lei*, 95 Hawai'i 278, 286, 21 P.3d 880, 888 (2001) (quoting HRPP Rule 9(c)(3)(i)). The interpretation of court rules involves principles of statutory construction and is subject to *de novo* review. *Lei*, 95 Hawai'i at 281, 21 P.3d at 883. The district court's exercise of its inherent power to dismiss traffic violations for failure to prosecute is reviewed under the abuse of discretion standard. *Id.*

Deryke relies on *Lei* in support of his contention that the district court abused its discretion in failing to exercise its inherent power to dismiss the charges due to the State's unnecessary delay in prosecuting him. Deryke's case, however, is distinguishable from *Lei*. In *Lei*, the State waited thirty months and twenty-six months, respectively, to execute two separate bench warrants issued after the defendant, Lei, failed to appear. *Id.* at 279–80, 21 P.3d at 881–882. Lei proffered evidence that he lived in Kalihi Valley and was available for service the en-

---

5. The transcript of the March 29, 2005, hearing identified substantial portions of the hearing as "indiscernible." On October 26, 2005, the parties filed a stipulation, which was approved by the District Court of the First Circuit, to supplement the record on appeal with an agreed-upon statement of what transpired during certain of the indiscernible portions of the hearing. In this opinion, we quote from the transcript as supplemented by the parties' agreed-upon statement of what transpired at the hearing.

6. HRPP Rule 9(c) (2006) provides, in relevant part:

(c) *Execution or service and return.*
(1) BY WHOM. A warrant shall be executed by a police officer or by some other officer authorized by law....
(2) TERRITORIAL LIMITS. The warrant may be executed or the summons served at any place within the State.
(3) MANNER.
(i) Warrant. The warrant shall be executed without unnecessary delay by the arrest of the defendant.

tire time the warrants were outstanding. *Id.* at 280, 286, 21 P.3d at 882, 888. There was no indication that Lei intentionally avoided service. *Id.* at 286, 21 P.3d at 888. The State did not adduce any evidence that it attempted to execute the warrants on Lei during the time they were outstanding or establish that an attempt to serve the warrants on Lei would have been futile. *Id.* at 286–87, 21 P.3d at 888–89. Except for the trial court's judicial notice of the large volume of outstanding misdemeanor bench warrants, the record did not indicate "*any reason* for the lengthy delay in executing the warrants." *Id.* (emphasis added).[7]

Based on these facts, the Hawai'i Supreme Court held that the State failed to execute the bench warrants without unnecessary delay as required by HRPP Rule 9(c)(3)(i). *Id.* at 287, 21 P.3d at 889. The court further held that the trial court abused its discretion in failing to invoke its inherent power to dismiss the charges based on the HRPP Rule 9 violation. *Id.*

■ Deryke's case is different. After making his appearance in the case, Deryke stipulated to one continuance and moved on his own to continue the trial no less than five additional times.[8] The six trial continuances delayed Deryke's trial date almost nine months. Deryke did not remain in Hawai'i but moved to California while the trial was pending. The record reflects that on September 4, 2003, when the district court issued a bench warrant based on Deryke's nonappearance, Deryke's counsel stated that he was unable to contact Deryke who was residing in California. The record also indicates that Deryke's counsel represented that counsel would file an *ex parte* motion to recall the bench warrant and reinstate the bail if he got in touch with Deryke.

According to Deryke, he returned to Oahu from California on October 3, 2003, but there is no indication that Deryke informed his counsel or the State of Deryke's return. Because Deryke, by his own admission, was not

in Hawai'i until one month after the bench warrant was issued, any expeditious attempt to execute the warrant on him would have been futile. On February 18, 2005, sixteen and a half months after Deryke claims he returned to Hawai'i, Deryke appeared at district court and tendered the $250 bail amount on the outstanding bench warrant. Through new counsel, Deryke then moved to dismiss the charges of OVUII and unsafe changing of lanes based on an alleged "unnecessary delay" in executing the bench warrant.

■ The discretionary power of a trial court to dismiss traffic offenses for violation of HRPP Rule 9 is derived from its inherent judicial power to administer justice. *See State v. Mageo,* 78 Hawai'i 33, 37, 889 P.2d 1092, 1096 (App.1995) (citing *State v. Moriwake,* 65 Haw. 47, 55, 647 P.2d 705, 711–12 (1982)). The parameters within which the trial court properly exercises its discretion to dismiss charges based on its inherent power to administer justice "is a matter of balancing the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system." *Moriwake,* 65 Haw. at 56, 647 P.2d at 712 (quoting *State v. Braunsdorf,* 98 Wis.2d 569, 297 N.W.2d 808, 817 (1980) (Day, J., dissenting)).

■ The assessment of "fundamental fairness to a defendant" necessarily includes scrutiny of the defendant's conduct. In *Lei,* the court recognized the relevance of the defendant's conduct by noting that there was no evidence in the record that Lei "intentionally avoided service" and no showing that "an attempt to serve Lei would have been futile." *Lei,* 95 Hawai'i at 286, 21 P.3d at 888. Here, Deryke avoided trial and delayed the proceedings by moving to California and seeking numerous continuances through his lawyer. The record indicates that Deryke then failed to appear for his continued trial, failed to inform his lawyer of his whereabouts, returned to Hawai'i without contacting his lawyer, waited sixteen and a half months, and

7. The Hawai'i Supreme Court ultimately determined that "the volume of outstanding warrants alone is insufficient to excuse the delays in the present case." *State v. Lei,* 95 Hawai'i 278, 287, 21 P.3d 880, 889 (2001).

8. In *Lei,* there were no similar requests by the defendant to repeatedly continue the trial. *Id.* at 279–280, 21 P.3d at 881–82.

then hired a new lawyer to file a motion to dismiss the charges because of "unnecessary delay" in executing the bench warrant. The odor of manipulation surrounding Deryke's conduct is apparent.

Deryke's affirmative conduct contributed to the delay in executing the warrant. If the district court was required to dismiss the charges against Deryke based on HRPP Rule 9 under the circumstances of this case, it would encourage others to engage in similar evasive conduct, which would be detrimental to the orderly functioning of the court system. In addition, the State was entitled to place some reliance on statements made by Deryke's counsel that Deryke was residing in California and that counsel would file a motion with the court if counsel made contact with Deryke.

 The Sixth Amendment right to a speedy trial protects defendants from unreasonable post-accusation delay. *United States v. Marion*, 404 U.S. 307, 313–21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court held that in determining whether a defendant's constitutional right to a speedy trial has been violated, courts must apply a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. 2182. The Court identified the following four factors that courts should consider in applying the balancing test: 1) the length of the delay; 2) the reason for the delay; 3) whether and how the defendant asserted his or her right to a speedy trial; and 4) whether the defendant was prejudiced by the delay. *Id.* at 530–32, 92 S.Ct. 2182.[9]

 Although a trial court's exercise of its inherent power to dismiss charges for failure to execute a warrant without unnecessary delay is grounded on HRPP Rule 9, and not on the constitutional right to a speedy trial, the policies and protections underlying both HRPP Rule 9 and the constitutional right are similar. Because the constitutional right to a speedy trial already provides defendants with protection against unreasonable post-accusation delay, a trial court should only sparingly invoke its inherent power to dismiss charges based on HRPP Rule 9.

"Society has a strong interest in punishing criminal conduct." *Moriwake*, 65 Haw. at 56, 647 P.2d at 712. After stipulating to a one-month continuance, Deryke delayed the trial for almost eight additional months through five requests for continuance. Statements made by his counsel at the time the bench warrant was issued left the impression that Deryke no longer resided in Hawai'i. Deryke left Hawai'i while his charges were pending, which precluded the immediate execution of the bench warrant upon its issuance, and Deryke did not give notice of his return. Rewarding Deryke's conduct through a dismissal of his charges based on HRPP Rule 9 would create incentives for other defendants to engage in similar conduct. The delay from the date on which Deryke asserts he returned to Hawai'i until he appeared at the district court to tender the $250 bail on the bench warrant was sixteen and one half months. There is no indication that Deryke was prejudiced by the delay. This case is sufficiently different from *Lei* that the same result is not compelled. We conclude that the district court did not err in declining to invoke its inherent power to dismiss the charges against Deryke based on HRPP Rule 9 and in denying Deryke's Motion to Dismiss.

## III. CONCLUSION

The Judgment entered on March 29, 2005, in the District Court of the First Circuit, Kaneohe Division, is affirmed.

Dissenting Opinion by FOLEY, J.

Defendant–Appellant Erik Barend Deryke (Deryke) argues that the District Court of the First Circuit, Kaneohe Division, (district court) improperly denied his March 17, 2005

---

9. Hawai'i courts also apply the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether an accused's right to a speedy trial

under Article I, Section 14 of the Hawai'i Constitution has been violated. *State v. Wasson*, 76 Hawai'i 415, 419, 879 P.2d 520, 524 (1994).

Motion to Dismiss despite the State's failure to undertake any effort to serve the September 4, 2003 bench warrant at any point prior to his voluntary appearance at court on February 18, 2005. Deryke further argues that the district court adopted an improper policy of not dismissing any charges for failure to prosecute unless more than two years had elapsed between issuance and service of the bench warrant. At the March 29, 2005 hearing on the Motion to Dismiss, the district court specifically ruled:

> THE COURT: (indiscernible) this Court has held in numerous instances that two years is the cutoff point for purposes of determining reasonableness of action by the State. Court further notes that other judges in similar jurisdictions held the same way. For purposes of uniformity and justice, this Court will follow that two year limitation until such time as the Courts are given further information by the appellate court (indiscernible) is going to deny the motion as not being in violation of Rule 9.

(Brackets omitted.)

Deryke relies on *State v. Lei*, 95 Hawai'i 278, 21 P.3d 880 (2001), in support of his contention that the State delayed unreasonably in prosecuting him. In *Lei*, delays of approximately 31 months occurred between the issuance and service of two bench warrants upon Lei. *Id.* at 279–80, 21 P.3d at 881–82. In ruling that the lower court had abused its discretion by not dismissing the charges against Lei, the Hawai'i Supreme Court weighed the State's valid interest in punishing criminal conduct against the harms resulting from the failure to timely prosecute. *Id.* at 285–87, 21 P.3d at 887–89. The court agreed with the principle stated in *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981), that "[u]nreasonable delay in the determination of a criminal action subverts the public good and disgraces the administration of justice." *Lei*, 95 Hawai'i at 285, 21 P.3d at 887 (brackets in original omitted).

The *Lei* court, in analyzing the reasonableness of the State's efforts, considered a number of factors. *Id.* at 286, 21 P.3d at 888. The court noted that the lower court properly took judicial notice of the large volume of outstanding misdemeanor bench warrants in the district courts, describing such volume as "a relevant consideration as to what constitutes a reasonable amount of time for execution." *Id.* The court also considered whether Lei had been amenable to service and whether the State had acted with due diligence. *Id.* at 286–87, 21 P.3d at 888–89. Moreover, the court expressly did not adopt a bright-line definition of "unreasonable delay" (as adopted by the district court in the instant matter). *Id.* at 286 n. 7, 21 P.3d at 888 n. 7 ("We hold only that delays of two years and six months and two years and two months constitute unnecessary delays in the present case."). The court considered the delay as only one part of a comprehensive analysis. *Id.* at 287, 21 P.3d at 889. The district court in the instant case should have engaged in a similarly multifaceted inquiry.

Deryke correctly notes that in both *Lei* and this case, the State offered no justification for the delays. Deryke offered uncontroverted evidence that he was available for service during the bulk of the elapsed time. As to the State's diligence, there was no evidence that the State had undertaken any efforts at service. The district court did not take judicial notice of any large volume of outstanding misdemeanor bench warrants, as did the lower court in *Lei*. Yet, the district court decided that because only 18 months had elapsed, Deryke was not entitled to a dismissal. The district court did not consider the other factors set forth in *Lei* and expressly relied on a two-year bright line rule. This was reversible error. Therefore, I respectfully dissent.