**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000025
18-JUL-2025
01:27 PM
Dkt. 70 MO**

NO. CAAP-22-0000025

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KYLE McKEOWN, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NO. 2FFC-18-0000171)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Kyle O. McKeown (**McKeown**) appeals from the December 29, 2021 Findings of Fact, Conclusions of Law, and Order Granting Defendant McKeown's Motion to Dismiss Pursuant to Hawaii Rules of Penal Procedure Rule 48 [(**Rule 48 Motion to Dismiss**)] and Denying Defendant McKeown's Motion to Dismiss for Speedy Trial Violation [(**Speedy Trial Motion to Dismiss**)] (**FOFs/COLs/Order**), entered by the Family Court of the Second Circuit (**Family Court**).[1]

I. BACKGROUND

A. Initial Proceedings

On May 30, 2012, McKeown was arrested, and on June 1, 2012, the State of Hawai'i (**State**) charged McKeown via complaint

---

[1] The Honorable Richard T. Bissen presided.

in 2FC121000240 with the offense of Murder in the Second Degree.[2]

Case number 2FC121000240 was dismissed on July 2, 2012.

On June 29, 2012, the State charged McKeown via indictment in 2FC121000280 with the offense of Murder in the Second Degree of his four-year-old son (**Son**) in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 (2014), 663-1.6 (2016), and 702-203 (2014). The indictment provided:

> That during or about the period of May 21, 2012 through May 29, 2012, inclusive, in the County of Maui, State of Hawaii, KYLE O. MCKEOWN, as a principal and/or accomplice, being the parent, guardian, or any other person having legal or physical custody of a four year old male minor, did intentionally or knowingly cause the death of a four year old male minor, a person less than 18 years of age, by intentionally or knowingly inflicting injury on him, and/or by intentionally or knowingly failing to seek and obtain timely medical attention for a four year old male minor, a duty imposed by law, intending or knowing that the failure to seek and obtain timely medical attention would result in the death of a four year old male minor[.]

A total of 30 days elapsed between May 30, 2012, and June 29, 2012, which are not excluded for Rule 48 purposes.[3]

_____

[2] For purposes of analyzing whether McKeown was entitled to relief pursuant to Hawaii Rules of Penal Procedure (**HRPP**) Rule 48 (**Rule 48**), the calculation of time begins on May 30, 2012.

[3] HRPP Rule 48(c) provides in relevant part:

**Rule 48. Dismissal.**

. . . .

**(c) Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:

(1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

(2) periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3) periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel;

(continued...)

McKeown's trial was set for September 17, 2012. A total of 80 days elapsed from June 29, 2012, to September 17, 2012, which are not excluded for Rule 48 purposes.

McKeown's trial in case number 2FC121000280 was continued a number of times for various reasons as follows.

On August 16, 2012, trial was continued from September 17, 2012, to October 15, 2012, on McKeown's request because the parties were still working on discovery. McKeown waived his Rule 48 rights for this period. A total of 28 days elapsed between September 17, 2012, and October 15, 2012, which are excluded for Rule 48 purposes.

---

[3](...continued)

        (4) periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:

            (i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

            (ii) the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case;

        (5) periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant;

        (6) the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense;

        (7) a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance; and

        (8) other periods of delay for good cause.

3

On September 27, 2012, trial was continued to January 14, 2013, on McKeown's request, because the autopsy report had just been given to McKeown, which triggered "a lot of other work." McKeown waived his Rule 48 rights for this period.

On January 3, 2013, trial was continued to March 11, 2013, to allow time for the Family Court to turn over medical records to the State and for the State to prepare a protective order. McKeown waived his Rule 48 rights for this period.

On February 28, 2013, trial was continued to May 20, 2013, and McKeown waived his Rule 48 rights for this period.

On April 18, 2013, trial was continued to August 5, 2013, on both parties' request, and McKeown waived his Rule 48 rights for this period. A total of 294 days elapsed between October 15, 2012, and August 5, 2013, which are excluded for Rule 48 purposes.

On July 11, 2013, trial was continued to September 5, 2013, and McKeown waived his Rule 48 rights for this period.

On September 5, 2013, trial was continued to October 4, 2013, on McKeown's request, and McKeown waived his Rule 48 rights for this time period. A total of 60 days elapsed between August 5, 2013, and October 4, 2013, which are excluded for Rule 48 purposes.

On October 4, 2013, trial was continued to November 8, 2013, on McKeown's request because McKeown was still waiting for records to turn over to his expert. McKeown waived his Rule 48 rights for this period. A total of 35 days elapsed between October 4, 2013, and November 8, 2013, which are excluded for Rule 48 purposes.

On November 8, 2013, trial was continued to November 21, 2013, because records were still not completed. A total of 13 days elapsed between November 8, 2013, and November 21, 2013, and the Family Court found that it was unclear whether this time period was excluded or included under Rule 48. However, the Family Court appears to have included this period in its Rule 48 computation.

On November 21, 2013, trial was continued to January 15, 2014, and McKeown waived his Rule 48 rights for this time period.

On January 15, 2014, trial was continued to February 19, 2014, on McKeown's request because McKeown was waiting for the return of a subpoena duces tecum for records of about 400 pages. McKeown waived his Rule 48 rights for this period.

On February 19, 2014, trial was continued to March 14, 2014, on McKeown's request because McKeown was waiting for the return on the subpoena. McKeown waived his Rule 48 rights for this period.

On April 17, 2014, trial was continued to May 22, 2014, because the parties stipulated to a qualified protective order regarding health/medical information requiring signatures from the State and the Family Court before the records could be provided. McKeown waived his Rule 48 rights for this period.

On May 22, 2014, trial was continued to July 2, 2014, because counsel needed time to review the subpoena records and provide expert witnesses with the information for review. McKeown waived his Rule 48 rights for this period. A total of

223 days elapsed between November 21, 2013, and July 2, 2014, which are excluded for Rule 48 purposes.

On July 2, 2014, proceedings were continued to July 16, 2014, to hold a hearing on McKeown's Motion to Set Trial wherein McKeown requested a trial date in February 2015 due to expert availability. A total of 14 days elapsed between July 2, 2014, and July 16, 2014, which are excluded for Rule 48 purposes.

On July 16, 2014, the Family Court granted McKeown's Motion to Set Trial, and trial was continued to February 2, 2015. McKeown waived his Rule 48 rights for this period. A total of 201 days elapsed between July 16, 2014, and February 2, 2015, which are excluded for Rule 48 purposes.

On December 10, 2014, McKeown moved for withdrawal and substitution of counsel because the attorney was closing his law practice. The Family Court granted the motion, and McKeown's second attorney indicated at the hearing that he would likely not be prepared for trial at the February 2015 trial date.

On January 21, 2015, trial was continued to March 30, 2015, on McKeown's request because McKeown's second attorney had not yet gone over discovery. McKeown waived his Rule 48 rights for this period. A total of 56 days elapsed between February 2, 2015, and March 30, 2015, which are excluded for Rule 48 purposes.

On February 25, 2015, McKeown moved for withdrawal and substitution of counsel because McKeown's second attorney was unable to continue representing McKeown due to their overwhelming workload. The Family Court granted the motion, and although the

April 2015 trial date was maintained, trial would not go on that date.

On March 13, 2015, trial was continued to August 17, 2015, on McKeown's request because there was supposed to be a stipulation to send the pathology slides to an expert. McKeown's Rule 48 waiver form reflected the period between April 6, 2015 and August 17, 2015, but not between March 30, 2015, and April 6, 2015. A total of 140 days elapsed between March 30, 2015 and August 17, 2015, which are excluded for Rule 48 purposes.[4]

On June 22, 2015, trial was continued to September 21, 2015, to allow time for McKeown to prepare a stipulation for disclosure of pathology slides. McKeown waived his Rule 48 rights for this period. A total of 35 days elapsed between August 17, 2015, and September 21, 2015, which are excluded for Rule 48 purposes.

On September 15, 2015, trial was continued to June 22, 2016, on McKeown's request due to expert availability. McKeown waived his Rule 48 rights for this period. A total of 266 days elapsed between September 21, 2015, and June 13, 2016, which are excluded for Rule 48 purposes.

On June 6, 2016, trial was continued to October 17, 2016. McKeown waived his Rule 48 rights from August 1, 2016, to October 17, 2016, and June 13, 2016, to July 31, 2016 would be charged to the State. A total of 49 days elapsed between June 13, 2016, and July 31, 2016, which are not excluded for Rule 48 purposes. A total of 77 days was found to have elapsed

---

[4] Although trial was continued to August 17, 2015, the Family Court calculated the time period based on August 24, 2015. However, McKeown also waived his Rule 48 rights between August 17, 2015, and August 24, 2015.

between July 31, 2016, and October 17, 2016, which are excluded for Rule 48 purposes.

On October 7, 2016, the State filed a Motion to Continue Trial Date (**State Motion to Continue**), requesting a continuance because the prosecutor assigned to this case was in trial for another case that would continue through November 2016. At the hearing on the State Motion to Continue, McKeown objected to the Motion to Continue and did not waive his Rule 48 rights. The Family Court continued trial to February 6, 2017, over McKeown's objection, noting that most continuances to date had been waived by McKeown. The Family Court found a total of 112 days between October 7, 2016, and February 6, 2017, are included for Rule 48 purposes.

On December 2, 2016, trial was continued to September 25, 2017, on McKeown's motion due to expert availability. McKeown waived his Rule 48 rights for this period. A total of 231 days elapsed between February 6, 2017, and September 25, 2017, which are excluded for Rule 48 purposes.

On August 8, 2017, McKeown again moved for and the Family Court granted withdrawal and substitution of counsel. The September 25, 2017 trial date was vacated and continued to May 14, 2018, due to McKeown's expert availability. McKeown waived his Rule 48 rights for this period.

On April 5, 2018, McKeown filed a Motion to Dismiss Indictment, arguing, *inter alia*, that the indictment should be dismissed with prejudice because the competent evidence presented to the grand jury failed to establish probable cause to believe

Son died as a result of a delay in medical treatment and/or that McKeown caused the death of a human.

The State submitted a Motion to Dismiss Without Prejudice (**State Motion to Dismiss**) case number 2FC121000280, dated April 16, 2018, with an "Approved and So Ordered" signature block for the court. The State Motion to Dismiss was filed the next day, April 17, 2018, with the order signed by the Family Court. The State later asserted, in response to the Rule 48 Motion to Dismiss the subsequently filed charge, that the reason for the reindictment was that the State became aware of a "major error" pertaining to one of its expert witnesses:

> With respect to the State's reindictment of this case, the State became aware of a major error pertaining to one of its expert witnesses during the beginning of 2017. At the time, the State did not have any reason to question the accuracy of the subject expert's findings until the State had an opportunity to speak with a different expert who happened to be testifying in an unrelated matter during the latter part of November, 2016, in the above-reference [sic] Capobianco case. Based on the new information and evidence provided to the State, the State felt compelled to correct the record and seek a reindictment in this matter.

The State further represented:

> [A]t no time is the State saying that the defendant is not responsible for the murder of his son. Um, that's clear in the transcript. That's clear in the grand jury presentation. And all along the State has -- has maintained that it was the defendant that caused those injuries.
>
> The thing that did change was when they were caused, the severity, and because the injuries, based on the State's, um, additional forensic evidence through its forensic expert, the evidence would have -- I mean the injuries would have been caused five to seven days before.

McKeown later acknowledged that the omission theory was not new to the defense, that the State had not been previously aware that there was insufficient evidence to support the omission theory in the 2012 indictment, and that the defense knew all along it would possibly need to preserve testimony for evidence occurring for a broader time period.

As noted above, the Family Court approved the State Motion to Dismiss on April 17, 2018; the case was dismissed without prejudice.  The hearing date for McKeown's April 5, 2018 motion to dismiss was stricken (per minutes dated May 3, 2018), with the court's minutes noting the dismissal without prejudice on April 17, 2018.

A total of 204 days elapsed between September 25, 2017, and April 17, 2018, which are excluded for Rule 48 purposes.

B.    Further Proceedings

On May 23, 2018, the State recharged McKeown via indictment in 2FFC-18-0000171 with Murder in the Second Degree in violation of HRS § 707-701.5(1).  Trial was set for August 27, 2018.  A total of 36 days elapsed between April 17, 2018, and May 23, 2018, which are excluded for Rule 48 purposes.

On June 14, 2018, McKeown requested and was granted supervised release.

On August 27, 2018, trial was continued to March 4, 2019, because McKeown was still going through evidence, and his expert would not be available until the first two weeks of March. McKeown waived his Rule 48 rights for this period.  A total of 189 days elapsed between August 27, 2018, and March 4, 2019, which are excluded for Rule 48 purposes.

On January 22, 2019, the parties stipulated to and the Family Court approved continuing trial to May 20, 2019.

McKeown filed the Rule 48 Motion to Dismiss on May 15, 2019, and the Speedy Trial Motion to Dismiss on June 13, 2019.

The Family Court heard the motions on June 19, 2019, and stated its rationale as follows:

10

Ah, the Court has sat on this case since 2012 when the case came up.  And so I have seen, um, just about all of the hearings that have occurred and there have been many, many, many, many hearings.

Um, I -- I wanted to say that the Court didn't observe any, and I think to use your word, um, malicious conduct on either side.  Um, I think it was -- I think it was always heart wrenching when one of the attorneys involved had to withdraw because it basically restarted the case.

Kind of like what happened when you came on board, Mr. Nardi, just last year.  Um, what made it extremely difficult was that Mr. McKeown was in custody most of that time or a lot of that time.  Um, and that was factored in as the delays became more and more, for whatever the reasons were.

Um, but I agree with you that it's, while not directly relevant as to how many attorneys were assigned and why they left, um, I just don't attribute that blame to either side.  It certainly wasn't Mr. McKeown firing his attorneys.  It wasn't that case.  And it wasn't the attorneys not being willing to serve.  There were different circumstances that caused that.

But in many (inaudible) we were just towards the end getting ready to start a trial and then someone would get up and leave.  And -- and I think that was especially troubling, um, and that happened with -- we know now that you're the fourth attorney that was assigned to this case.

The second part that the Court recalls, ah, that was a significant part was the availability of experts, or the unavailability of experts, might be more.

There are some experts that weren't ready for six months.  They weren't going to be available.  And to his credit, Mr. McKeown waived most of that time I think at the -- at the discussions of his attorney and -- and at their advice.

Um, those seem to be the two biggest factors that I can recall in this case just as a group or as a -- as a majority of the reasons why these cases were continued.  Was either to accomodate the experts or because the attorneys were leaving.

. . . .

I was at all of those hearings and I -- the attorneys were very much in agreement with the delays that were occurring for whatever advantage that each side may have -- may have gotten from that.

. . . .

A person who witnessed that being the case, at least there were no objections made by defense, previous counsel, I can understand why you would object now.  But at the time there were no counsel saying, your Honor, the State's dragging their feet.  They're not getting us the documents, you know, we're at a disadvantage.  Um, the parties seem to be in agreement with the pace at which the trial was proceeding.  That's the best I can say.

11

On July 31, 2019, the Family Court entered Findings of Fact, Conclusions of Law, and Order (**2019 FOFs/COLs/Order**), dismissing 2FFC-18-0000171 without prejudice.  A total of 107 days elapsed between March 4, 2019, and June 19, 2019, which are excluded for Rule 48 purposes.

The total number of days elapsed from May 30, 2012, to June 19, 2019, is 2,576 days.  Of the 2,576 elapsed days, 2,196 days are excluded and 380 days are not excluded under Rule 48. Accordingly, considering the permissible 180 day period pursuant to Rule 48, McKeown was subject to an excess period of 200 days.

McKeown timely appealed the 2019 FOFs/COLs/Order.  On May 28, 2021, we vacated and remanded the 2019 FOFs/COLs/Order with instructions to the Family Court to make specific findings regarding the State Motion to Continue and the Family Court's consideration thereof in its analysis.  On December 29, 2021, the Family Court entered the FOFs/COLs/Order.

The Family Court entered, *inter alia*, the following findings regarding the State Motion to Continue and State Motion to Dismiss:

> 17.  On October 7, 2016, the State filed a Motion to Continue Trial (hereinafter "State's Motion").  The State's Motion was heard on October 12, 2016.  The basis for the State's Motion was due to the assigned Deputy Prosecutor Robert Rivera being in trial in another case, State v. Capobianco (2PC161000133).  At the hearing on State's Motion, the Defendant objected to the State's request for continuance and did not waive any rights under HRPP Rule 48. Over Defendant's objection, the Court granted the State's Motion and trial was set for February 6, 2017.  A total of 112 days elapsed between October 17, 2016, and February 6, 2017, and those day are included pursuant to HRPP Rule 48(c)(3).
>
> . . . .
>
> 21.  On April 17, 2018, the State of Hawaii made a Motion to Dismiss without Prejudice case number 2FC121000280.  The Court granted the motion and the case was dismissed without Prejudice.

(Format altered).

McKeown challenges COLs 7 to 10, 12, and 14 to 17, which provide in relevant part:[5]

<u>Analysis of the Estencion Factors</u>

. . . .

7. Under the second <u>Estencion</u> factor, the court may consider whether the delay was caused by the State's neglect or deliberate misconduct, delays caused by the court itself, or whether the delay was caused by the defendant's own conduct. <u>State v. Fukuoka</u>, 141 Hawaiʻi 48, 60, 404 P.3d 314, 326 (2017). "Responsibility for Rule 48's efficacy does not rest solely on the prosecutor, but 'the prosecutor, the court, and the accused share responsibility for carrying out the speedy trial requirements of Rule 48.'" <u>State v. Faalafua</u>, 67 Haw. 335, 339, 686 P.2d 826, 829 (1984) (quoting <u>State v. Soto</u>, 63 Haw. 317, 321, 627 P.2d 279, 281 (1981)). In this case, neither party has ever engaged in deliberate misconduct or neglect which would have contributed to a delay in the proceedings. Moreover, it was the Court's observation that the parties were very much in agreement with the delays and continuances that were occurring for whatever advantage each side may have gained from it.

. . . .

8. The second <u>Estencion</u> factor weighs in favor of a dismissal without prejudice.

9. "[U]nder the third <u>Estencion</u> factor, the court evaluates considerations relating to the purposes of HRPP Rule 48 and the administration of justice." <u>Fukuoka</u>, 141 Hawaiʻi at 62, 404 P.3d at 329. "In analyzing the third <u>Estencion</u> factor . . . the court must also consider[] the impact of reprosecution on the administration of justice generally." <u>Id.</u> at 63, 404 P.3d at 329. "Prejudice to the defendant may also be considered when analyzing the impact of reprosecution on the administration of HRPP rule 48 and the administration of justice." <u>Id.</u> The presence of prejudice to the defendant may be of substantial importance of analyzing the third <u>Estencion</u> factor, but "there is no requirement that the absence of prejudice be separately considered prior to dismissal with prejudice under Rule 48(b)." <u>Id.</u> at 64, 404 P.3d at 330 (internal quotation marks and citation omitted). In this case, considering the possible prejudices which include lack of memory and loss of potential witnesses as a result of the delay in the trial proceedings and as a result of the prosecution re-filing charges under both the commission and omission theories, the Court found that parties had been in agreement in most of the delays in the trial proceedings. Further, the Court finds no impropriety on the part of the State in re-filing charges using an additional theory as the "Rules of [Penal] Procedure allow for a dismissal of a case and refiling when there's a change in circumstance or a change in evidence." <u>See</u> Transcript of Hearing on Motion to Dismiss on June 19, 2019, Pg. 27, lines 6-8.

---

[5]     Some citation formatting cleaned up.

10.  The third <u>Estencion</u> factor weighs in favor of a dismissal without prejudice.

. . . .

12.  The Court further concludes based on the analysis of the three (3) <u>Estencion</u> factors as noted above, that a dismissal without prejudice is warranted.

<u>Analysis of Speedy Trial Factors</u>

. . . .

14.  In this case, delays in the trial were a result of agreement by the parties, with the consent of the Defendant, or due to withdrawal of defense attorneys, [sic] There were only two (2) significant periods of delay attributed to the State.  Once when the assigned Prosecutor was in trial in another high-profile case and then following the dismissal of 2FC121000280 and the re-filing of charges in the current case number.  Therefore, the first two factors, weigh in favor of the State, as previously found in the HRPP Rule 48 analysis.

15.  As to factor three (3), the assertion of his right to a speedy trial, the Defendant did not make any active assertions during the pendency of the case until filing a Motion to Dismiss for Speedy Trial Violation on June 13, 2019.  The Defendant was ready for trial in June and October of 2016 when the assigned prosecutor became unavailable due to being in trial in another courtroom. During that time, the Defendant did not waive his rights to a speedy trial and/or HRPP Rule 48.  At all other times, the parties were in agreement as to continuances.  Therefore, the third speedy trial factor weighs in favor of the State.

16.  The fourth factor, prejudice to the defendant weighs in favor of the State, as Defendant has only made a showing of possible prejudice, rather than specific prejudice.

17.  Based on findings set forth above and taking into consideration the numerous accommodations to continue and the cooperation between the parties to seek a trial date the Court cannot conclude that the Defendant's right to a speedy trial has been violated.

(Format altered).

McKeown timely filed a Notice of Appeal.

II.  <u>POINTS OF ERROR</u>

McKeown raises two points of error on appeal, contending that the Family Court erred in failing to dismiss 2FFC-18-0000171 with prejudice (1) as a result of a HRPP Rule 48 violation, and (2) on the grounds that McKeown's rights to a speedy trial under the Sixth Amendment of the U.S. Constitution

14

and article I, section 14 of the Hawaiʻi Constitution were violated.

### III. <u>APPLICABLE STANDARDS OF REVIEW</u>

> We review a trial court's decision to dismiss a case with or without prejudice for violation of HRPP Rule 48 for abuse of discretion. <u>See</u> <u>State v. Estencion</u>, 63 Haw. 264, 269, 625 P.2d 1040, 1044 (1981). An abuse of discretion occurs when "the decisionmaker 'exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.'" <u>State v. Kony</u>, 138 Hawaiʻi 1, 8, 375 P.3d 1239, 1246 (2016) (quoting <u>State v. Vliet</u>, 95 Hawaiʻi 94, 108, 19 P.3d 42, 56 (2001)).

<u>State v. Fukuoka</u>, 141 Hawaiʻi 48, 55, 404 P.3d 314, 321 (2017).

The appellate court reviews questions of constitutional law under the right/wrong standard. <u>State v. Davis</u>, 133 Hawaiʻi 102, 111, 324 P.3d 912, 921 (2014).

### IV. <u>DISCUSSION</u>

A. <u>Rule 48 Dismissal - With or Without Prejudice</u>

Pursuant to HRPP Rule 48(b), trial must commence within six months from the date of arrest if bail is set or from the filing of the charge, whichever is sooner. If the initial charge is dismissed and recharged with the same charge, the time period for the proceedings for both offenses are computed together, albeit with the exclusion of the period between the dismissal of the initial charge and the filing of the new charge. <u>See</u>, <u>e.g.</u>, <u>State v. Holt</u>, 67 Haw. 246, 247, 684 P.2d 971, 971-92 (1984) (computing time period for Rule 48 purposes based on proceedings for both initial charge and subsequent re-indictment, excluding the time period between the charge and the re-indictment).

It is undisputed that the Family Court properly found a Rule 48 violation and dismissed the case. McKeown argues, however, that the Family Court abused its discretion in failing to order dismissal with prejudice.

15

In <u>State v. Estencion</u>, the Hawaiʻi Supreme Court held:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

63 Haw. at 269, 625 P.2d at 1044.

It is undisputed that the first <u>Estencion</u> factor – the seriousness of the offense – weighs in favor of dismissal without prejudice. The charge here stems from the alleged murder of a young child by his own father. As noted by the Family Court, due to the special circumstances of the offense, McKeown faces the possibility of life in prison without parole.

McKeown argues that the Family Court erroneously concluded that the second <u>Estencion</u> factor – reason for delay that led to dismissal – and third <u>Estencion</u> factor – impact of reprosecution on the administration of justice – both weighed in favor of dismissal without prejudice. In the alternative, McKeown argues that the Family Court abused its discretion by dismissing without prejudice without properly considering the second and third <u>Estencion</u> factors. McKeown argues that the Family Court failed to consider the delay caused by granting the State Motion to Continue over objection and the State Motion to Dismiss one month prior to trial in analyzing the second and third <u>Estencion</u> factors. McKeown argues that the Family Court erred in finding that the parties agreed to the delays because McKeown objected to the State Motion to Continue and the State Motion to Dismiss.

The Family Court clearly did consider the delays attributable to the State as they are included in the court's

FOFs. The crux of the issue appears to be whether the Family Court allocated adequate weight to those delays in concluding that the second <u>Estencion</u> factor weighs in favor of dismissal. Notably, "[i]n evaluating the facts and circumstances of the case, the court should focus on 'the culpability of the conduct that led to the delay.'" <u>Fukuoka</u>, 141 Hawaiʻi at 60, 404 P.3d at 326. The court may consider whether the delay was caused by the State's neglect or deliberate misconduct, the defendant's conduct, or by the court itself. <u>Id.</u> The court, the prosecution, and the defendant all share the responsibility to facilitate the timely resolution of proceedings. <u>See</u> <u>id.</u> at 61-62, 404 P.3d at 327-28.

Although continuances requested by the defendant are excluded in computing the time for trial commencement under Rule 48, the trial court may consider these excluded time periods in evaluating whether the <u>Estencion</u> factors weigh in favor of dismissal with or without prejudice. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 61-62, 66, 404 P.3d at 327-28, 332 (holding that in evaluating the second <u>Estencion</u> factor, the court may consider whether the delay was caused by the defendant's conduct, including delays attributed to defendant's discovery requests); <u>State v. Nieto</u>, No. CAAP-21-0000516, 2023 WL 5528918, *3 (Haw. App. Aug. 28, 2023) (SDO) (holding circuit court did not abuse its discretion in dismissing the case without prejudice based in part on the conclusion that "[w]ith respect to the facts and circumstances of the case which led to the dismissal, the State's one continuance . . . must be viewed in relation to [defendant's] 19 prior requests to continue the trial date.").

17

Here, in weighing the second Estencion factor, the Family Court concluded in COL 7 that neither party ever engaged in deliberate misconduct or neglect which would have contributed to a delay in the proceedings. The Family Court presided over the many, many proceedings involving delays and observed that the parties were very much in agreement with the delays and continuances that were occurring. Obviously, this did not include the two instances relied on by McKeown, the State Motion to Continue and the State Motion to Dismiss. The Family Court's FOFs and the record indicate that the majority of the continuances were indeed upon McKeown's request or with his agreement. Approximately seven years (2,576 days) elapsed since the May 30, 2012 indictment, approximately six years (2,196 days) of which were excluded via McKeown's waiver, and approximately one year (380 days) of which was not excluded. Based on the record, there were over two dozen continuances and/or delays, at least thirteen of which were on McKeown's request or due to McKeown's motions, and the vast majority of which were otherwise agreed to and waived by McKeown. The record indicates that these continuances were primarily due to the withdrawal and substitution of three of McKeown's attorneys, the availability or unavailability of McKeown's experts, and additional time needed for the production and review of records by McKeown's attorneys or experts.

Regarding the State Motion to Continue, McKeown argues that a delay due to the prosecutor being in a separate trial was foreseeable, the State should have assigned a different prosecutor to McKeown's case, and the refusal to assign a

different prosecutor supports dismissal with prejudice.[6] However, even if that particular delay might have potentially been avoidable, there is no argument or support for the proposition that it was malicious or calculated, and that on balance, the facts and circumstances of that delay do not weigh in favor of dismissal with prejudice. See State v. Kim, 109 Hawai'i 59, 64, 122 P.3d 1157, 1162 (App. 2005), superseded on other grounds by State v. Nicol, 140 Hawai'i 482, 494 n.12, 403 P.3d 259, 271 n.12 (2017) ("Despite the fact that the State's delay was unjustified, it does not in and of itself tip the balance toward dismissal with prejudice."); see also State v. White, 92 Hawai'i 192, 203-04, 990 P.2d 90, 101-02 (1999) (holding in speedy trial violation context that defendant being responsible for substantial part of the delay outweighed State's motions to continue that did not appear calculated to cause unreasonable delay).

McKeown also argues that the State Motion to Dismiss was a deliberate delay done to create a tactical advantage less than a month before trial was set to commence. McKeown asserts that because he had motions pending designed to limit the State to presenting only a theory of acute injury, the State re-indicted McKeown with evidence in direct conflict with the acute injury theory, and instead relied on a theory of omission, thereby weakening McKeown's defense. The Family Court found,

---

[6] The Family Court stated in FOF 17 that the prosecutor in this case was in trial in State v. Capobianco, 2PC161000133. This court takes judicial notice that the Capobianco case involved a jury trial on charges of second degree murder and arson and was conducted over several months before the jury reached a verdict. The prosecutor first appeared in this case (McKeown) when the original complaint was filed on June 1, 2012.

19

however, that the State re-filed charges under both commission and omission theories, and that there was "no impropriety on the part of the State in re-filing charges using an additional theory as the [HRPP] allow for a dismissal of a case and refiling when there's a change in circumstance or a change in evidence." Indeed, the 2012 indictment charged McKeown under both commission and the omission theories. The 2012 indictment also charged McKeown based on a time period spanning May 21, 2012, through May 29, 2012, *i.e.*, the nine days prior to Son's death on May 30, 2012. McKeown in his 2018 Motion to Dismiss argued that the Family Court should dismiss or strike the omission theory portion of the 2012 indictment because the State had not presented sufficient competent evidence that Son died as a result of a failure to act. The State then dismissed the initial charges, re-indicted McKeown, and entered evidence supporting the omission theory. The State explained that the re-indictment was necessary because it became aware of a major error pertaining to one of its expert witnesses regarding the timing and severity of the injuries leading to Son's death. McKeown has acknowledged that the omission theory was not new to the defense, that the State had not been previously aware that there was insufficient evidence to support the omission theory in the 2012 indictment, and that the defense knew all along it would possibly need to preserve testimony for evidence occurring for a broader time period. Accordingly, it was not clearly erroneous for the Family Court to find that the State's re-indictment of McKeown was not due to a deliberate delay or to hamper the defense.

Based on a review of the entirety of the record, we conclude that the Family Court properly weighed the delays caused by the State against delays caused or agreed to by the defendant and did not err or abuse its discretion in concluding that on balance, the second Estencion factor does not weigh in favor of dismissal with prejudice.

With respect to the third Estencion factor, McKeown argues that the impact of reprosecution on the administration of justice weighs in favor of dismissal with prejudice because McKeown's case had already been dismissed twice, the lengthy delay caused by the State resulted in an unreasonably oppressive amount of pretrial incarceration, and the defense was prejudiced when the State changed its theory of the case after the case had been pending for five years.

In analyzing the third Estencion factor, the court "may consider whether the State or the court's conduct reflect a pattern of lack of diligence, thereby suggesting that dismissal with prejudice is necessary to vindicate the purposes of HRPP Rule 48 and justice generally." Fukuoka, 141 Hawaiʻi at 63, 404 P.3d at 329. The court may also consider prejudice to the defendant due to the length of the delay insofar as a lengthy delay may reflect a lack of due diligence on the part of the State or the court. Id. at 65, 404 P.3d at 331. Prejudice to the defendant is not a mandatory factor to be considered by the trial court prior to ordering dismissal with prejudice under Rule 48. Id. at 64, 404 P.3d at 330. However, a finding of prejudice is not insignificant. Kim, 109 Hawaiʻi at 66, 122 P.3d at 1164.

21

Here, the Family Court analyzed the third <u>Estencion</u> factor as follows:

> In this case, considering the possible prejudices which include lack of memory and loss of potential witnesses as a result of the delay in the trial proceedings and as a result of the prosecution re-filing charges under both the commission and omission theories, the Court found that parties had been in agreement in most of the delays in the trial proceedings. Further, the Court finds no impropriety on the part of the State in re-filing charges using an additional theory as the "Rules of [Penal] Procedure allow for a dismissal of a case and refiling when there's a change in circumstance or a change in evidence."

McKeown argues that the delay combined with the State's change in theory caused him prejudice because McKeown would have to search for witnesses who may no longer be available or have lost their memories of the days leading up to Son's death. However, as McKeown acknowledges in his opening brief, the Family Court expressly addressed the possibility of prejudice due to lack of memory and loss of potential witnesses as a result of the delay in trial proceedings, and nevertheless concluded that the third <u>Estencion</u> factor weighed in favor of dismissal without prejudice. McKeown does not point to specific witnesses or potentially exculpatory evidence that might have been lost or forgotten due to the delays caused by the State. McKeown generally asserts that the delay combined with the State's change in theory resulted in him having to search for witnesses who saw Son five to seven days prior to Son's death, five years after the observations were made. However, the majority of the over five year delay prior to the State re-filing the charges against McKeown was upon McKeown's request or with his agreement, and not due to a lack of due diligence on the part of the State or court. See <u>Fukuoka</u>, 141 Hawaiʻi at 65, 404 P.3d at 331.

On this record, notwithstanding the overall period of delay, as well as the period of delay attributable to the State, we conclude that the Family Court did not abuse its discretion in determining that the third Estencion factor weighed in favor of dismissal without prejudice.  Accordingly, we conclude that the Family Court did not abuse its discretion in dismissing the case without prejudice for violation of Rule 48.

B.    Constitutional Rights to a Speedy Trial

McKeown argues that the Family Court erred in failing to dismiss the indictment with prejudice as a result of the violation of McKeown's constitutional right to a speedy trial because all four Barker factors weigh in favor of finding a constitutional speedy trial violation.  McKeown challenges COLs 14 to 17 in conjunction with his argument that his constitutional right to a speedy trial was violated.

> The Sixth Amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution guarantee a defendant in a criminal case the right to a speedy trial in all prosecutions. State v. Lau, 78 Hawaiʻi 54, 62, 890 P.2d 291, 299 (1995).  Whether the defendant's right to a speedy trial has been violated is determined by applying the four factors articulated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):  "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." Lau, 78 Hawaiʻi at 62, 890 P.2d at 299 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). No one factor "is to be regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. (quoting State v. Wasson, 76 Hawaiʻi 415, 419, 879 P.2d 520, 524 (1994)).  Rather, the factors are related "and must be considered together with such circumstances as may be relevant." Id. (quoting Wasson, 76 Hawaiʻi at 419, 879 P.2d at 524).  When a defendant's right to a speedy trial has been violated, the only remedy is dismissal with prejudice. Id.

State v. Visintin, 143 Hawaiʻi 143, 156-57, 426 P.3d 367, 380-81 (2018).

The supreme court further explained:

> [I]n accordance with the U.S. Supreme Court's decision in Barker, that different weights are assigned to different

23

> reasons in determining whether a delay of trial violates a defendant's constitutional speedy trial right. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

Id. at 159, 426 P.3d at 383 (quoting Lau, 78 Hawaiʻi at 63, 890 P.2d at 300) (cleaned up).

Regarding the first Barker factor – length of delay – McKeown argues that the Family Court erred in stating the delays were a result of agreement by the parties. For purposes of its speedy trial analysis, the Family Court clearly recognized that most, but not all, of the delays were by agreement of the parties. McKeown further argues that the 380 day length of the delays is excessive, and that the first Barker factor therefore weighs in favor of a finding of a violation of McKeown's right to a speedy trial.

We note that the length of delay factor serves as a trigger for whether inquiry into the other Barker factors is warranted. State v. White, 92 Hawaiʻi at 202, 990 P.2d at 100 ("The length of delay triggers the Barker analysis."). It does not itself weigh in favor of or against a finding of a speedy trial violation. See id. at 203, 990 P.2d at 101 (holding that eleven-month delay warranted inquiry into the other Barker factors).

Here, as discussed *supra*, the Family Court found that the total number of days that were not waived by McKeown was 380 days, and the vast majority of the cumulatively lengthy delay of 2,576 days were upon request, with agreement, and/or upon waiver by McKeown. The length of the delay here warranted inquiry into

24

the other Barker factors.  The Family Court concluded that the length of the delay and the second Barker factor – reasons for delay – weighed in favor of the State, pointing to the other high-profile trial the prosecutor was in, and the dismissal and refiling, which was due to new information concerning flawed evidence previously presented to support the earlier indictment, as supporting that conclusion.  It appears that the Family Court viewed the State-caused reasons for delay as neutral, and considered that the lengthiness of the overall delay weighed in favor of the State because most of the delay was at the request or with the agreement of McKeown.  We cannot conclude that the Family Court erred in this determination.  See White, 92 Hawaiʻi at 203-05, 990 P.2d at 101-02 (holding that on balance, the second Barker factor weighed in favor of the State because the defendant contributed in substantial part to the delay which he later claimed prejudiced him, and the State's delay did not appear to be calculated to cause unreasonable delay).

Regarding the third Barker factor – defendant's assertion of his right to speedy trial – McKeown argues that the Family Court erred by failing to explain why the two significant periods of delay attributed to the State did not support the finding of a constitutional violation, or how it is mitigated by other delays.  McKeown submits that he had demanded that his case proceed to trial at the time of these two delays.

A defendant has no duty to bring himself or herself to trial; the State has that duty.  Visintin, 143 Hawaiʻi at 160, 426 P.3d at 384 (quoting Wasson, 76 Hawaiʻi at 420, 879 P.2d at 525).  Thus, a defendant does not waive his or her right to a

25

speedy trial by failing to demand one. Id. However, the assertion of the right to a speedy trial is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. (quoting Barker, 407 U.S. at 531-32). A defendant's motion to dismiss based on speedy trial "is tantamount to an assertion of his or her constitutional right to a speedy trial." Id. (quoting Wasson, 76 Hawai‘i at 420-21, 879 P.2d at 525-26).

Here, McKeown did in fact file his Speedy Trial Motion to Dismiss on June 13, 2019 – after he was re-indicted following the granting of the State Motion to Dismiss – asserting his constitutional right to a speedy trial had been violated. McKeown argues that he demanded that his case proceed to trial when the State filed the State Motion to Continue and the State Motion to Dismiss, but he does not provide any support in the record showing that he previously asserted his speedy trial rights.[7] Indeed, just prior to the State Motion to Dismiss, McKeown had filed his own Motion to Dismiss and did not raise any arguments regarding his right to a speedy trial. In the Speedy Trial Motion to Dismiss, McKeown did not demand or assert that he wanted a speedy trial; rather, he demanded that the indictment be dismissed with prejudice because of a speedy trial violation. This is more than a semantic distinction in this case because of the years of delay in asserting his speedy trial rights and in seeking delays for reasons that were beneficial to his defense –

---

[7] McKeown filed no written opposition to the State Motion to Continue and did not request or otherwise provide a transcript for the October 12, 2016 hearing. There is no filing by McKeown related to the State Motion to Dismiss; the case was dismissed without a hearing.

26

at no point did McKeown actually assert that he wanted a speedy trial.

In <u>Barker</u>, the Supreme Court explored the difficulty of this analysis and concluded that a flexible approach, rather than a rigid test, was necessary to properly determine whether a defendant's constitutional right to a speedy trial was violated:

> [A] suggested alternative would restrict consideration of the right to those cases in which the accused has demanded a speedy trial. Most States have recognized what is loosely referred to as the 'demand rule,' although eight States reject it. It is not clear, however, precisely what is meant by that term. Although every federal court of appeals that has considered the question has endorsed some kind of demand rule, some have regarded the rule within the concept of waiver, whereas others have viewed it as a factor to be weighed in assessing whether there has been a deprivation of the speedy trial right. We shall refer to the former approach as the demand-waiver doctrine. The demand-waiver doctrine provides that a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial. Under this rigid approach, a prior demand is a necessary condition to the consideration of the speedy trial right. . . .
>
> Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights. The Court has defined waiver as an intentional relinquishment or abandonment of a known right or privilege. Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence in the loss of fundamental rights. [W]e have held:
>
> > Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver.
>
> The Court has ruled similarly with respect to waiver of other rights designed to protect the accused.
>
> In excepting the right to speedy trial from the rule of waiver we have applied to other fundamental rights, courts that have applied the demand-waiver rule have relied on the assumption that delay usually works for the benefit of the accused and on the absence of any readily ascertainable time in the criminal process for a defendant to be given the choice of exercising or waiving his right. But it is not necessarily true that delay benefits the defendant. There are cases in which delay appreciably harms the defendant's ability to defend himself. Moreover, a defendant confined to jail prior to trial is obviously disadvantaged by delay as is a defendant released on bail but unable to lead a normal life because of community suspicion and his own anxiety.

The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

It is also noteworthy that such a rigid view of the demand-waiver rule places defense counsel in an awkward position. Unless he demands a trial early and often, he is in danger of frustrating his client's right. If counsel is willing to tolerate some delay because he finds it reasonable and helpful in preparing his own case, he may be unable to obtain a speedy trial for his client at the end of that time. Since under the demand-waiver rule no time runs until the demand is made, the government will have whatever time is otherwise reasonable to bring the defendant to trial after a demand has been made. Thus, if the first demand is made three months after arrest in a jurisdiction which prescribes a six-month rule, the prosecution will have a total of nine months—which may be wholly unreasonable under the circumstances. The result in practice is likely to be either an automatic, pro forma demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. Such a result is not consistent with the interests of defendants, society, or the Constitution.

We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

In ruling that a defendant has some responsibility to assert a speedy trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. Such cases have involved rights which must be exercised or waived at a specific time or under clearly identifiable circumstances, such as the rights to plead not guilty, to demand a jury trial, to exercise the privilege against self-incrimination, and to have the assistance of counsel. We have shown above that the right to a speedy trial is unique in its uncertainty as

28

> to when and under what circumstances it must be asserted or may be deemed waived. But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.
>
> We, therefore, reject both of the inflexible approaches—the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which he have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

Barker, 407 U.S. at 523-30 (cleaned up).

In implementing that approach here, we cannot conclude that the third Barker factor weighed heavily in favor of either McKeown or the State. As the Supreme Court further explained, none of the Barker factors are either necessary or sufficient to establish a deprivation of the constitutional right of speedy trial. Id. at 533 ("these factors have no talismatic qualities; courts must still engage in a difficult and sensitive balancing process . . . carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution").

Thus, we turn to the fourth Barker factor – prejudice to the defendant. McKeown was prejudiced to an extent by the pretrial time he spent incarcerated, although he was released in 2019 before he asserted his speedy trial rights were violated. We similarly recognize that McKeown has lived under a cloud of suspicion that he murdered his four-year-old child. However, there is no specific claim that witnesses died or evidence otherwise became unavailable due to the delay, although that remains a possibility as the case has not gone to trial and the case against McKeown was dismissed without prejudice, apparently

without a further indictment.  We cannot conclude that this factor weighs heavily in favor of either party.  However, we also cannot conclude that the Family Court clearly erred in determining that it weighed more in favor of the State.

Considering all of the Barker factors, and the specific and overall circumstances reflected in the Family Court findings and conclusions, as well as the entirety of the record in this case, particularly the extended periods of delay for which McKeown was responsible or in which he acquiesced without seeking a speedy trial, we conclude that the Family Court did not err in determining that McKeown's constitutional right to speedy trial was not violated.  Importantly, however, we further conclude that if McKeown were re-indicted and tried, in light of the additional passage of time, if, for example, witnesses died or evidence disappeared or testimony at trial indicated major lapses of memory, or the circumstances otherwise changed to McKeown's prejudice, McKeown could again seek relief based on his constitutional right to speedy trial.

V.   CONCLUSION

For these reasons, the Family Court's December 29, 2021 FOFs/COLs/Order is affirmed.

DATED:  Honolulu, Hawaiʻi, July 18, 2025.

| On the briefs: | /s/ Katherine G. Leonard<br>Presiding Judge |
|---|---|
| Matthew Nardi,<br>(Law Office of Matthew Nardi),<br>for Defendant-Appellant. | /s/ Keith K. Hiraoka<br>Associate Judge |
| Stephen K. Tsushima,<br>Special Deputy Attorney<br>General,<br>City & County of Honolulu,<br>for Plaintiff-Appellee. | /s/ Clyde J. Wadsworth<br>Associate Judge |